The next case on our calendar this morning is No. 20-1374, Lebetkin v. Giray. Good morning, Your Honor. Miranda Fritz for Appellant Stephen Lebetkin. This case presents to the court what was described in the decision in Train v. Ardshill Associates as a, quote, recurring type of dispute, close quote, that arises where a large transaction is successfully completed, a contracting party gets an enormous benefit of the bargain, but then, in an apparent state of buyer's remorse, refuses to honor an agreement. Could I interrupt your presentation on the merits to ask a question about appellate jurisdiction? This is an appeal from a decision that granted summary judgment dismissing the complaint, but the counterclaim remained pending at the time this notice of appeal was filed. Is that correct? No. The judge rendered decision in favor of Asia Giray. There was only one pending matter, and that was attorney's fees. But that was a counterclaim for attorney's fees under the contract. Is that correct? That was correct. That has now been adjudicated, and a notice of appeal has been filed on that aspect of the case as well. We proceeded with the appeal of this matter under the authority that authorizes entry of an appeal where the only remaining issue is attorney's fees. And does that apply where the attorney's fees is awardable as a matter of contract in a counterclaim that has to be adjudicated? Certainly, we believe so, and there was no issue that was presented from the defendant with respect to our proceeding on the appeal at that point. That may be, but if there's no jurisdiction, we have the obligation to raise that on our own. Did the district court enter a Rule 54B certification for an immediate appeal? No, the district court did not. We proceeded again based on authority that says where the only pending issue, the only remaining issue, is the amount of fees to be awarded, that the matter can go ahead and proceed. And you have authority that says that that applies where the fee award is not a matter of statutory grant, but is a matter of contract that has to be dealt with in a counterclaim? I don't have that in my remarks for today, but I can certainly provide that. Okay. On the new notice of appeal, has that been briefed? That has not been briefed. We've set a briefing schedule for that issue. Our view of that issue is that it will ultimately hinge on what occurs here, the separate issue of the amount of fees. In the event that this summary judgment decision were to be affirmed, then the only issue would be essentially a calculation of fees. Okay. Thank you. Following up on Judge Kearse's question, your position in the other case is that the result hinges on what we do here in terms of interpreting the contract and either affirming or rejecting the district court's view of it. Judge Kearse points out that the fees derive from that very same contract, and you're acknowledging that. So this is sounding increasingly like an unusually bifurcated appeal that typically wouldn't be permitted to go forward without Rule 54B. I look forward to receiving some authority from you, Judge Kearse's mate, and your opponent. We invite to respond as well if they choose, maybe within two days after you have filed your letter, and we'll look for your letter within a week. All right. Just to make clear, our view is that the critical issue in the case really does involve the court's granted summary judgment. We think that that issue is fully and properly presented by this appeal, and again, based on that authority that we were relying on in terms of the filing. And what we have here is a case in which a litigation was presented by Aisha Jure, who is the defendant in this proceeding. And that proceeding, her claims against Hamze Ulukaya with respect to her interest in Chobani, those claims were conceived, developed analytically, and factually by Mr. Lebeckis. He took certain information that he had learned during the course of their lengthy personal relationship, and based on his own business and his own financial, even his own legal background and experience, he was able to understand and research and develop evidence that established that claim. Am I correct? This is Judge Carney. Excuse me for a minute. I was struck in looking at the consulting agreement that the language of the agreement is forward-looking. It's dated July 2012, and it says, It doesn't say that consultant has already performed invaluable services in conceiving of litigation and in gathering information, and in consideration of the services rendered to date, Ms. Jure agrees to provide 3% of whatever recovery she may ultimately receive. End of story. It's not framed that way at all. It's prospective, and it contemplates services that were maybe performed for a couple of weeks, but it doesn't have any retrospective element. What's your response to that? How does the agreement that was signed reflect the narrative that you're providing us? The district court certainly decided to look only at the services performed after the agreement, and that is exactly one of the errors that we're focused on. The factual record reflected, and the evidence reflected, that the agreement between the two had been reached in May, and that Mr. LeBecq can then perform... But the consulting agreement, excuse me, but the consulting agreement that they both signed says that all previous communications between the parties are superseded. It says that this is the agreement. It's not at all uncommon for an agreement like this to incorporate, to be memorialized, after initial work or due diligence has been performed, and that's what happened here. The testimony of Mr. LeBecq is unquestionably that the agreement was reached in May, and that from the period May through July, he performed invaluable and critical services. Let me ask a different question, please, Ms. Fritz. Is it the case, am I right in having the impression that Mr. LeBecq does not dispute that he sent the emails to Ms. Duret's lawyers without her permission and contrary to her instructions? Is that correct? He doesn't dispute the authenticity of all the emails that have been produced. Is that correct? Let me just, completing the response on the prior question, you referenced the agreement and the language in the agreement. It is backward-looking, actually. In terms of the amount to be paid, it speaks of consideration for having performed services. So that language is in the agreement. And the word, perform and complete, arguably also envisions that services are continually being completed. But the critical point there is that there is evidence that the contract should be reasonably interpreted as memorializing events that occurred and establishing a fee for those invaluable services that are detailed in the case. And that it was significant error for the court to adopt its own interpretation of the agreement where there were reasonable and conflicting interpretations of critical language. And in that sense, obviously, this case implicates the decision in Rothenburg versus Lincoln Farm. It was the only decision that was relied upon by the defendant. And it was cited by the district court. But critically important is that that decision, which was actually authored by Judge Keirth, that decision proves the point that there were critical factual disputes here in terms of the proper interpretation of the agreement. Rothenburg makes absolutely clear that where there are reasonable and conflicting interpretations, that that can't be resolved by the court. That that has to go to the jury. And in this case, the reasonable interpretation of the agreement that was advanced by the plaintiff was that the obligation to pay the fee survives termination of the agreement. That is the language. Mr. Christie, you have two minutes of rebuttal. Thank you. You're over time. We're here for Mr. Smith. Can I just ask one quick question? Oh, sorry. Go ahead, please. I just want to be sure about something. Your summary judgment opposition brief in the district court didn't mention quantum merit at all. Correct? I was not the attorney on the matter below. I do believe that that claim continued based on the district court's earlier decision, and the summary judgment papers that were submitted certainly addressed the issue of the value of his services. So I believe it did consider that issue. I mean, your adversary raised the issue in the moving brief, but I don't see anything in your opposition brief. In terms of the value of the services, it's our position, really, that where there was such a successful outcome here and where the parties had negotiated 30% for attorneys who quite literally took the information that was delivered to them by Mr. Lebeckin, advanced that claim and then settled that claim, that under those circumstances and with all the evidence of the work that had been performed by Mr. Lebeckin, both before and after the entry of the agreement, and I would note, for example, at Appendix 337-38, there is a very striking email that illustrates that Mr. Lebeckin was critically involved in the formulation of the theories and approach that ultimately led to the success of this case. There were critical documents and issues that arose from an SBA loan that had been obtained early on in the relationship between Ayesha Geray and Hamdi Ulukaya. Your argument, I have it. Thank you. Thank you very much. You've reserved two minutes of rebuttal. We'll hear from Mr. Smith. Thank you, Your Honor. May it please the Court, Michael Smith for appellee Ayesha Geray. Dr. Geray's motion for summary judgment was solely centered on there being no triable issue of fact that her termination of the six-week-old consulting agreement was for cause, and that appellant had no evidence of the reasonable value of the services he allegedly performed in the six weeks. Appellant's principal opposition to the motion below was that, as he argues here, that the consulting agreement could not be terminated because it allegedly was, quote, intended, close quote, to be non-terminable. The consulting agreement does not say that, and no language of the agreement can be reasonably interpreted to mean that. Appellant concedes that he did not even discuss with Dr. Geray the issue of non-terminability. Therefore, there was not and could not have been an agreement by her on that issue. He concedes that he did not even discuss the issue with her, even though he suspected that his personal relationship with her was about to end. In his reply brief at page 17, footnote 9, appellant again concedes that he never discussed non-terminability with Geray herself. He says that it is, quote, irrelevant, close quote, because he allegedly discussed it with an attorney, Lou Sassoon, who he claims in his reply brief was Geray's attorney. But his amended complaint alleged that Mr. Sassoon was his attorney. For example, at paragraph 31 of the amended complaint, appellant alleges Sassoon and Sassoon and Simrat, which is his firm, quote, drafted the consulting agreement and reviewed it independently with Lebeckin as Lebeckin's counsel, close quote. He even sued Mr. Sassoon for malpractice as his attorney in this case. And Judge Cote dismissed those allegations, and appellant does not appeal from that dismissal. Appellant now changes his story to fit the situation, just like he claims that the consulting agreement, signed on and with an effective date of July 16, 2012, actually started in May of 2012. The district court agreed that no reasonable jury could find that he was not terminated for cause, as he, by his own admitted conduct, could not work with Geray's attorneys, one of his principal responsibilities. He admits that he strongly disagreed with the attorney's strategy in Acumen, attacked them, accused them of churning, attempted to manage them when that was not one of his responsibilities, and sought to replace them, all within six weeks. Appellant did not dispute these facts. He just argues that the attorneys needed to work with him and not the other way around. The district court agreed that he was terminated for cause because he deliberately disregarded Dr. Geray's instructions. There is no factual dispute about that. Appellant admitted he received the instructions. He just did not think he had to follow them. One instruction he admittedly did not follow was not to do anything on her case after his termination on September 6, 2012. And yet, two years later, he secretly met with opposing counsel to discuss the settlement of Geray's case because he had his own idea of how that should happen. And he admits that he made a threat of the public disclosure of damaging personal information. And I direct your attention to the reply brief at page 10 for that. There, the appellant writes that Lebeckan's suggestion to counsel Fichabani that a personal and sensitive issue for Ulukaya would likely become public if the litigation proceeded would not be an uncommon topic of conversation in relation to settlement. And appellant claims here that the jury ought to consider whether that was improper. Of course it was improper. He made a threat to disclose publicly something that might be personally damaging, which was one of the issues on which he and Geray's counsel vehemently disagreed. Appellant claims, as a factual issue, that whether he was terminated for cause, because he claims here that he was really terminated for ending his romantic relationship with Dr. Geray. But as the district court had previously found, that was not alleged in his complaint, even as a reason for his termination, let alone the reason. This is another example of how he changes his story to fit the situation. He even wanted to change his admitted date of ending their personal relationship, which he admitted was August 27, and he wanted to change that to the following week, as he does in his briefs in this court, so that it appears to be closer to the September 6 termination date. The fact is, the district court did not weigh conflicting evidence on the motion. Appellant simply didn't amass or marshal any evidence in opposition to the motion, as he was required to do. And respectfully, the order should be affirmed. Thank you, Your Honor. Thank you very much. Ms. Fritz, you have two minutes of rebuttal. And so, by virtue of what you just heard, we have an example of what occurred during the case. A lot of vitriol, a lot of allegations, all of which have been denied by Mr. Lebeckin in a case that is permeated with credibility issues. Since it involves both two individuals that had a personal relationship but ended it, and attorneys who, clearly, you just heard in their voices, were agitated over the fact that Mr. Lebeckin raised issues regarding primarily the fact that they refused to have any conversation with Hamdi Ulukaya prior to the filing of a complaint in order to try to determine whether the case could be resolved without years of litigation. So, those are the issues that exist throughout the case. In every instance, Mr. Lebeckin disputes the claim that he was properly terminated. The court asked earlier whether Mr. Lebeckin admits the email communications. I just want to emphasize that the email communications reflect, at Appendix 316 and all the way through 338, that there were communications where Mr. Lebeckin is actively assisting in the case and working with the attorneys. There is no issue between the attorneys, no issue articulated by the attorneys, until August 23rd when, according to the testimony of Aisha Duray, she receives from Mr. Lebeckin an email that raises issues about the attorney's conduct and then forwards that to the attorney. Now, certainly that caused the attorneys, according to the testimony in the record, to begin to insist that Ms. Duray had to get rid of Mr. Lebeckin, but she did not do that. What then occurs is further communications between the two of them, and then over the Labor Day weekend, a falling out between the two in their personal relationship. Going back to the language of the agreement, there is a reasonable and conflicting interpretation of this agreement that the obligation to pay the fee survives termination of the agreement. There is no question that that is the precise language, there is no question that a state court reviewing a related case held exactly that, and the evidence that was presented by Mr. Lebeckin reflects the fact that in conversations with Lusa Soon, who was certainly representing Duray, it was discussed that the agreement should not be terminable, that the fee should survive in case there was, in fact, some issue. Your time has expired. Please wrap up. Okay. We've cited, we've reviewed each of the cases relied upon by the district court, whether it's the Rothenberg case that was authored by Judge Pierce, the UBS case, the Brill case. This is not unusual. Thank you, Ms. Fritz. I think we have your arguments. Thank you very much. Okay. Thank you both. We will reserve decision.